**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2765
_____

SEEDS OF PEACE COLLECTIVE; THREE RIVERS
CLIMATE CONVERGENCE

v.

CITY OF PITTSBURGH; LUKE RAVENSTAHL, Mayor of Pittsburgh;
MICHAEL HUSS, Director of Public Safety; NATHAN HARPER, Chief of the
Pittsburgh Bureau of Police; WILLIAM E. BOTCHER, Assistant Chief of the Pittsburgh
Bureau of Police; MICHAEL T. RADLEY, Assistant Director of Pittsburgh City Parks;
OFFICER KEVIN SELLERS (Badge No. 3602); OFFICER ERIC KURVACH (Badge
No. 3480); OFFICERS DOE 1-100;

MICHAEL T. RADLEY, OFFICER KEVIN SELLERS,
OFFICER ERICH KURVACH,

Appellants.

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 2-09-cv-01275)
District Judge:  Honorable Gary L. Lancaster

Submitted under Third Circuit LAR 34.1(a)
on March 18, 2011

Before:  BARRY, CHAGARES, and ROTH, <u>Circuit Judges</u>

(Opinion filed: November 29, 2011)

**ROTH**, <u>Circuit Judge</u>:

## I. <u>Introduction</u>

Pittsburgh Assistant City Parks Director Michael Radley and Pittsburgh Police Officers Eric Kurvach and Kevin Sellers appeal the denial of their motion to dismiss claims by Three Rivers Climate Convergence (Three Rivers) under 42 U.S.C. § 1983 for violation of its First and Fourth Amendment rights. Three Rivers' complaint alleged that Radley deliberately obstructed its efforts to obtain permits to use Pittsburgh City parks for protests of an International Coal Conference and G-20 Summit taking place in Pittsburgh, and that he was involved in the seizure of its materials by City officials.[1] Radley contends that these claims should have been dismissed because Three Rivers failed to adequately allege his involvement in conduct violating the First and Fourth Amendments.

## II. <u>Background</u>

On December 11, 2009, Three Rivers and Seeds of Peace Collective (Seeds of Peace) filed an amended complaint, naming as defendants the City of Pittsburgh, Radley, and several other City officials and police officers. The complaint alleges, *inter alia*, that Three Rivers sought to mobilize people with similar views on climate and environmental

---

[1]Three Rivers has conceded that it has not adequately alleged claims against Officers Kurvach and Sellers and that these claims should be dismissed. Accordingly, we focus on Three Rivers' claims against Radley.

concerns to protest the International Coal Conference and G-20 Summit taking place in Pittsburgh during the week of September 20, 2009. Three Rivers sought to use two parks in Pittsburgh, Point State Park and later Schenley Park, for demonstrations and as a "Convergence space" which would "provide a temporary, 24-hour-a-day, education-based, sustainability-camp community with associated support infrastructure for attendees and demonstrators between September 20-25." According to Three Rivers, the defendants obstructed and hindered its demonstration efforts in several ways. We consider only those allegations relating to Radley, Pittsburgh's Assistant City Parks Director.

*Point State Park Permit.* Three Rivers applied to use Point State Park several times, but "City officials" denied these applications for a variety of reasons. The officials first claimed that the City police and the Secret Service would be using the entire park as a staging area and later claimed that they had never received Three Rivers' permit application. The City police later decided that they only needed half of the park but Three Rivers was not informed of this decision and City officials continued to insist that the entire park was unavailable. Despite this insistence, City officials decided to hold in the park a "Free Speech Festival" featuring Al Gore and other prominent speakers on the evening before the G-20 Summit would begin. When Three Rivers modified its permit request to accommodate the festival, the City refused to issue the permit on the grounds that the City needed to use the park for two footraces scheduled for the week before and the week after the week of the G-20 Summit. Three Rivers and other groups then sued the City, City officials, and federal agencies responsible for the security of the G-20

Summit, alleging that the denial of a permit violated their First Amendment rights and seeking an injunction. *See Codepink Pittsburgh Women for Peace v. U.S. Secret Serv.*, 09-1235 (W.D. Pa. Sept. 17, 2009). Radley and other witnesses for the City testified at a hearing on the preliminary injunction and insisted that Three Rivers could not use the park. The District Court granted the preliminary injunction in part and required the City to permit Three Rivers to use the park for a demonstration during one day of the G-20 Summit.

*Seizure of Materials.* Because Three Rivers' demonstrators could not camp in the park overnight, it requested permission to store its tent, tables, chairs, and educational materials overnight in the park. Radley gave Three Rivers permission to store these items overnight in the park, stating that the City did not "plan to remove your vehicle or overnight tent," but refused Three Rivers' request to leave two people overnight to protect its materials because this would constitute overnight camping. In reliance on Radley's statements, Three Rivers left its materials in the park but, by the following day, the items were gone. A City spokesperson denied that the police had taken Three Rivers' property, telling a reporter, "It was Public Works." Despite numerous calls to the City, Three Rivers has still not been able to recover its property or obtain compensation.[2]

_____

[2]Three Rivers also alleges that City officials (1) obstructed its demonstration efforts in Schenley Park by falsely insisting – both privately to Three Rivers and in testimony in the *Codepink* lawsuit – that the City had a policy against overnight camping in the park; (2) delayed issuance of a permit to use Schenley Park for a multi-day event; and (3) hindered Three Rivers' access to Schenley Park on Thursday, September 24, despite prior assurances that it would not do so. None of these allegations mentions Radley.

*Litigation.* After the Coal Conference and G-20 Summit ended, Three Rivers and Seeds of Peace initiated this action against the City, naming as defendants Radley, Sellers, and Kurvach, as well as the City of Pittsburgh, its Mayor (Luke Ravenstahl), Director of Public Safety (Michael Huss), Police Chief (Nathan Harper), Assistant Police Chief (William Botcher), and unnamed Officers Doe 1-100. The defendants moved for partial dismissal of the complaint under Fed. R. Civ. P. 12(b)(6), asserting qualified immunity and arguing that the personal involvement of several officials had not been adequately pleaded. The District Court agreed and dismissed all claims against Ravenstahl, Huss, Harper, and Botcher but only some of the claims against Radley, Kurvach and Sellers. The District Court permitted Three Rivers to proceed with its First and Fourth Amendment claims against these defendants. Radley, Kurvach and Sellers appealed the District Court's order.

## III. Jurisdiction and Standard of Review

Because appellants moved to dismiss on the basis of qualified immunity, the District Court's order partially denying the motion is a "collateral order" that is treated as final for purposes of 28 U.S.C. § 1291. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1946 (2009). We review *de novo* the denial of Radley's motion to dismiss to determine whether Three Rivers' complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949.

## IV. Discussion

Qualified immunity is not merely a defense to liability but an immunity from suit and thus is a proper basis for a motion to dismiss under Rule 12(b)(6). *Thomas v.*

5

*Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006). In this case, the dispositive question for qualified immunity purposes is whether Three Rivers has sufficiently alleged that Radley violated its constitutional rights. *See Pearson v. Callahan*, -- U.S. --, 129 S. Ct. 808, 818 (2009). At a minimum, "'[a] defendant in a civil rights action must have personal involvement in the alleged wrongs' to be liable." *Sutton v. Rasheed*, 323 F.3d 236, 250 (3d Cir. 2003) (quoting *Rode v. Dellarciprette*, 845 F.2d 1195, 1207 (3d Cir. 1988)). To recover against Radley, Three Rivers was therefore required to allege facts showing that Radley "through [his] own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Three Rivers' complaint makes only three allegations concerning Radley's conduct and each falls short of this requirement. The complaint first alleges that:

> Beginning in June 2009, as a matter of policy and practice City of Pittsburgh officials, including Mayor Ravenstahl, Public Safety Director Huss, Police Chief Harper, Assistant Chief Bochter and Assistant Parks Director Radley, deliberately misled [Three Rivers] leaders about the availability of traditional public forums, failed to issue and deliver permits to [Three Rivers] after publicly claiming they had been approved, outright denied [Three Rivers'] permit applications for specious and discriminatory reasons, and directed employees and agents to engage in various forms of harassment and intimidation, including seizing supplies that were essential to [Three Rivers'] planned demonstrations.

However, when the legal conclusions in this sentence are pared away, *see Iqbal*, 129 S. Ct. at 1950, we are left merely with allegations that Radley and a number of other defendants "failed to issue and deliver permits to [Three Rivers] after publicly claiming they had been approved, outright denied [Three Rivers'] permit applications . . .." Standing alone, this allegation is simply too vague to provide Radley "fair notice" of the

6

claims against him and "the grounds upon which [they] rest[]."[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint's second allegation concerning Radley is more specific: Radley was one of several City witnesses who testified at the *Codepink* preliminary injunction hearing and "insisted that the City could not allow [Three Rivers] to use Point State Park . . .." But Three Rivers does not allege that this testimony was false or misleading, and we fail to see how Radley's presumably truthful testimony at a hearing could violate Three Rivers' constitutional rights. Three Rivers argues that we can infer that Radley was the person most directly involved in the decision not to issue them a permit – and therefore liable for withholding the permit – because the City had him testify at the hearing. Even if Radley were the only City witness who testified at the hearing this inference would be a stretch, but the complaint alleges that Radley was merely one of several City witnesses, completely undermining the inference. Radley's role in the permit decision should have been alleged in the complaint, rather than left to inference.[4] *See Iqbal*, 129 S. Ct. at 1950.

---

[3]Similarly, we reject Three Rivers' suggestion that we construe the generic references to "the City" or "City officials" throughout the complaint as including Radley. The complaint does not define these terms and thus does not provide Radley "fair notice" of what he is alleged to have done to violate Three Rivers' constitutional rights. *See Twombly*, 550 U.S. at 561. Additionally, we do not consider factual allegations made in Three Rivers' brief but not pleaded in the complaint. *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 n.4 (3d Cir. 1993); *Williams v. New Castle Cnty.*, 970 F.2d 1260, 1266 n.4 (3d Cir. 1992).

[4]Three Rivers' failure to allege Radley's decision-making role is particularly puzzling because it obtained discovery from the City in the *Codepink* lawsuit and presumably had the opportunity to examine Radley at the preliminary injunction hearing in that case. Although Three Rivers' complaint "incorporates facts from *Codepink* that

7

Finally, the complaint alleges that Radley permitted Three Rivers to store its tent and other materials at Schenley Park overnight, told it that the City "did not plan to remove [its] vehicle or overnight tent," and refused Three Rivers' request to have two members guard the tent and materials overnight. Despite this statement, the City's Public Works Department allegedly seized Three Rivers' tent and materials. These allegations suggest at most that Radley negligently failed to communicate with Public Works to ensure that Three Rivers' property would not be seized. This does not rise to the level of a Fourth Amendment violation. *See*, *e.g.*, *Herring v. United States*, 129 S. Ct. 695, 703 (2009) ("[P]olice negligence in obtaining a warrant [does not] rise to the level of a Fourth Amendment violation."); *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001) (negligence leading to violent confrontation not sufficient for Fourth Amendment excessive force claim).[5]

Three Rivers argues that, even if its pleadings are deficient, it should be given an opportunity to amend its complaint to allege in greater detail Radley's involvement in the conduct giving rise to its claims. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."). Because Three Rivers has not described in detail the

---

are relevant" to its claims, no documents from the lawsuit are attached to the complaint or incorporated by reference.

[5]Three Rivers contends that it has alleged a pattern of obstructive conduct by City officials which supports an inference that Radley's assurances were intentionally misleading. Even if the complaint sufficiently alleged such a pattern, Radley's personal involvement in obstructive conduct is not sufficiently alleged, *see supra* n.3, and thus does not support an inference that he intended to have Three Rivers' property seized.

additional factual allegations it would make, we leave it to the District Court to consider on remand whether leave should be given to amend the complaint pursuant to Fed. R. Civ. P. 15(a).

**V.**     **Conclusion**

Three Rivers concedes that its claims against Sellers and Kurvach should have been dismissed. We conclude that the complaint fails to state a claim against Radley. Accordingly, we will vacate the order of the District Court to the extent that it denied appellants' partial motion to dismiss Three Rivers' claims against them and remand this case to the District Court with instructions to consider whether Three Rivers should be given leave to amend the complaint.